No. 21-30625

# In the United States Court of Appeals for the Fifth Circuit

PERCY TAYLOR,

*Plaintiff- Appellee*

v.

JAMES LEBLANC, SECRETARY,

*Defendant- Appellant*

———————————

On Appeal from the U.S. District Court, Middle District of Louisiana
No. 21-CV-72-BAJ-EWD
The Honorable Brian A. Jackson, District Judge

———————————

**BRIEF OF APPELLANT**

———————————

Jeff Landry
  Attorney General
Elizabeth B. Murrill*
  Solicitor General
  *Counsel of Record*
Ben Wallace
  Asst. Solicitor General
André Charles Castaing
Phyllis E. Glazer
  Asst. Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 326-6766
MurrillE@ag.louisiana.gov

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Plaintiff-Appellee: | Percy Taylor |
| Counsel for Plaintiff-Appellee: | Donna Unkel Grodner, *Grodner and Associates, APLC* |
| Defendant-Appellant: | James LeBlanc, Secretary, Louisiana Dept. of Public Safety & Corrections |
| Other DPS&C Defendants: | Robin Milligan; Timothy Hooper; Louisiana Dept. of Public Safety & Corrections |
| Counsel for Defendant-Appellant and Other DPS&C Defendant: | Jeff Landry, *Attorney General*; Elizabeth Murrill, *Solicitor General*; Ben Wallace, *Asst. Solicitor General*; André Charles Castaing, Phyllis E. Glazer, *Asst. Attys. General* LOUISIANA DEPARTMENT OF JUSTICE |

Respectfully submitted,
*/s/ Elizabeth Murrill*
Elizabeth Murrill,
Solicitor General

## STATEMENT REGARDING ORAL ARGUMENT

Secretary James LeBlanc of the Louisiana Department of Public Safety & Corrections ("DPSC") respectfully requests oral argument. Percy Taylor, a former state prisoner, claims that Secretary LeBlanc, personally and in his supervisory capacity only, violated Taylor's Due Process rights. What Taylor fails to specifically plead is the conduct of *LeBlanc*—as opposed to one of his subordinates—that was allegedly unconstitutional. Nor has Taylor pleaded what policy the Secretary allegedly failed to adopt, or what training he allegedly failed to implement, that would have obviously prevented Taylor's alleged constitutional injury. Yet the district court ignored these pleading deficiencies and denied LeBlanc qualified immunity from Taylor's § 1983 supervisory liability claim. This was error. Taylor's overly vague allegations against Secretary LeBlanc, among other things, entitle the Secretary to qualified immunity. Because oral argument will, at the very least, help clarify Taylor's precise claim against LeBlanc, it is likely to assist the Court in this interlocutory qualified immunity appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................. i

STATEMENT REGARDING ORAL ARGUMENT .................................. ii

TABLE OF AUTHORITIES .................................................................. v

JURISDICTIONAL STATEMENT .......................................................... 1

ISSUES PRESENTED FOR REVIEW ..................................................... 2

STATEMENT OF THE CASE ................................................................. 3

I.    Background Factual Allegations ..................................................... 3

II.   Procedural History ......................................................................... 9

    A.    *Taylor sues LeBlanc and other DPSC Defendants in state court and the case is removed.* ..................................................... 9

    B.    *LeBlanc and the other DPSC Defendants move to dismiss all claims against them.* ........................................................... 10

    C.    *Taylor amends his complaint, and briefing continues on Defendants' motion to dismiss.* .............................................. 10

    D.    *The District Court dismisses most of Taylor's claims, but denies LeBlanc qualified immunity on Taylor's Section 1983 supervisory liability claim* ............................................................... 13

SUMMARY OF THE ARGUMENT ....................................................... 14

STANDARD OF REVIEW .................................................................... 16

ARGUMENT ......................................................................................... 16

I.    Taylor Failed to Allege Facts Sufficient to Show that Secretary LeBlanc Violated His Constitutional Rights ................................... 17

II.   Secretary LeBlanc's alleged conduct was not objectively unreasonable under clearly established law. .................................. 23

CONCLUSION ..................................................................................... 28

CERTIFICATE OF SERVICE.................................................................29

CERTIFICATE OF COMPLIANCE .......................................................30

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Valdez,*
   913 F.3d 472 (5th Cir. 2019) ................................................................ 24

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ................................................................... 23, 25

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................... 17, 21

*Bailey v. Preston,*
   702 F. App'x 210 (5th Cir. 2017) ......................................................... 17

*Benfield v. Magee,*
   945 F.3d 333 (5th Cir. 2019) .................................................... 16, 17, 21

*Burge v. Par. of St. Tammany,*
   187 F.3d 452 (5th Cir. 1999) .......................................................... 1, 14

*Cass v. City of Abilene,*
   814 F.3d 721 (5th Cir. 2016) ................................................................ 25

*City of Escondido v. Emmons,*
   139 S. Ct. 500 (2019) ................................................................ 23, 26

*Cleveland v. Bell,*
   938 F.3d 672 (5th Cir. 2019) ................................................................ 17

*Connick v. Thompson,*
   563 U.S. 51, 62 (2011) ............................................................... 18, 21

*Cunningham v. Castloo,*
   983 F.3d 185 (5th Cir. 2020) ........................................................ 17, 26

*Doe v. Robertson,*
   751 F.3d 383 (5th Cir. 2014) ................................................................ 16

*Garcia v. Blevins,*
   957 F.3d 596 (5th Cir. 2020) ................................................................ 17

*Jason v. Tanner,*
   938 F.3d 191 (5th Cir. 2019) ............................................. 15, 18, 20, 21

*Johnson v. Johnson,*
   385 F.3d 503 (5th Cir. 2004) ................................................................ 27

*Marks v. Hudson,*
  933 F.3d 481 (5th Cir. 2019) ................................................................ 3

*Mullenix v. Luna,*
  577 U.S. 7 (2015) ..................................................................... 23, 24

*Orr v. Copeland,*
  844 F.3d 484 (5th Cir. 2016) ................................................................ 1

*Porter v. Epps,*
  659 F.3d 440 (5th Cir. 2011) ..................................................... passim

*Saucier v. Katz,*
  533 US. 194 (2001) ........................................................................ 16

*Valencia v. Davis,*
  836 F. App'x 292 (5th Cir. 2020) ....................................................... 25

*Vann v. City of Southaven, Mississippi,*
  884 F.3d 307 (5th Cir. 2018) .............................................................. 24

## STATUTES

28 U.S.C. 1331 ................................................................................. 1

28 U.S.C. 1337 ................................................................................. 1

La. Code Crim. P. art. 880 ............................................................. 7, 9

La. R.S. 15:1171-1179 ...................................................................... 22

La. R.S. 15:571.5 .............................................................................. 4

## OTHER AUTHORITIES

La. Admin. Code 22:I:325 ........................................................ 5, 6, 7, 22

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. XIV § 1 ............................................................. 22

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1367. The court denied in part Defendant-Appellant James LeBlanc's motion to dismiss seeking qualified immunity in a Ruling and Order on September 13, 2021. ROA.175; ROA.178. LeBlanc timely filed a Notice of Appeal on October 7, 2021. ROA.179.

Although an order denying a motion to dismiss is not ordinarily appealable, this Court has jurisdiction to review such orders pursuant to the collateral order doctrine when they involve the denial of qualified immunity. *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016); *Burge v. Par. of St. Tammany*, 187 F.3d 452, 482 (5th Cir. 1999) (applying rule to Louisiana state law qualified immunity). Jurisdiction is therefore proper.

## ISSUES PRESENTED FOR REVIEW

1. Did the district court err by denying Secretary LeBlanc qualified immunity even though Percy Taylor's allegations fail to establish that LeBlanc violated Taylor's constitutional rights?

2. Did the district court err by denying Secretary LeBlanc qualified immunity even though LeBlanc's alleged conduct was not objectively unreasonable in light of clearly established law defined at the appropriate level of specificity?

## STATEMENT OF THE CASE

Percy Taylor, a former prisoner, seeks money damages from Secretary James LeBlanc of the Louisiana Department of Public Safety and Corrections ("DPSC") in his individual capacity. Taylor alleges that he was not timely released from prison, ROA.74; that LeBlanc failed "to have competent people reviewing the release dates of inmates to ensure timely releases," ROA.96; and that therefore Taylor is entitled to monetary damages from LeBlanc based on his supervisory role as the head of the DPSC. ROA.101-102. The district court denied LeBlanc qualified immunity from this claim. ROA.175-176. Secretary LeBlanc filed this interlocutory appeal seeking reversal of that ruling. ROA.179.

## I. BACKGROUND FACTUAL ALLEGATIONS

On December 14, 1995, Percy Taylor was sentenced to 10 years imprisonment for a felony drug conviction out of Louisiana's 24th Judicial District Court in Jefferson Parish.[1] ROA.104. On December 9, 2000, he was released on "good time" parole supervision. ROA.104; *see*

---

[1] These facts, which come from Taylor's Amended Complaint and attachments, ROA.74-110, are treated as true for review of the denial of a Rule 12(b)(6) motion seeking qualified immunity. *Marks v. Hudson*, 933 F.3d 481, 485 (5th Cir. 2019).

La. R.S. 15:571.5 (providing for parole "after diminution of sentence for good behavior").

On July 16, 2001, while out on parole, Taylor committed a new felony offense in Jefferson Parish. ROA.104. For reasons that are unclear from Taylor's allegations, he remained out on parole for the next seven months, until February 20, 2002, when he was arrested for the new felony. ROA.104. Taylor remained in a local jail for the next 18 months awaiting trial on the new felony. ROA.105. Then, on October 15, 2003, he was convicted on the new felony as a habitual offender and sentenced to life in prison. ROA.104. Several days after his conviction on the new felony, on October 21, 2003, the Louisiana Board of Parole informed Taylor that as a matter of law his parole for the 1995 sentence had been revoked. ROA.104-105.

For reasons that also are not clear from Taylor's allegations, on June 14, 2006, his life sentence for the 2003 new felony conviction was amended to "20 years at hard labor in the custody of the [DPSC] without the benefit of probation or suspension of sentence and 'giving [Taylor] credit for all time served.'" ROA.104. More than a decade passed, and

Taylor did nothing to challenge the calculation of his proposed release date on the two felony sentences he was serving.

In May 2018, Taylor filed an Administrative Remedy Procedure[2] ("ARP") grievance with Warden Timothy Hooper of Elayn Hunt Correctional Center in Iberville Parish, where Taylor was imprisoned. ROA.79; *see* La. Admin. Code 22:I:325 (governing DPSC ARPs). In the ARP, Taylor claimed he should have received credit toward the completion of his 10-year sentence on the 1995 felony conviction for the roughly 18 months he spent in jail awaiting trial leading up to the 2003 felony conviction. ROA.104. But Taylor did not dispute that he was properly awarded credit for that same pretrial detention period toward the completion of his 20-year sentence on the 2003 felony conviction. In other words, Taylor claimed he was wrongfully denied "double credit" for those 18 months: credit toward completion of his sentence from 1995 on the "old" felony *and* credit toward the additional sentence he received in 2006 on the "new" felony. *See* ROA.106-109.

---

[2] The ARP process exists to provide offenders with a mechanism for "formal review of a complaint which relates to any aspect of his incarceration . . . includ[ing] actions pertaining to . . . time computations . . . ."). La. Admin. Code 22:I:325(D)(2).

Warden Hooper assigned Taylor's ARP to a subordinate, Robin Milligan. ROA.79. On July 9, 2018, Taylor's "first step" ARP was denied with written reasons. ROA.105 (excerpt of denial); *see* La. Admin. Code 22:I:325(J)(a)-(b) (providing for "first step" and "second step" ARP processes); *id.* § 22:I:325(F)(3)(a)(vii) ("At each stage of decision and review, offenders will be provided written answers that explain the information gathered or the reason for the decision reached."). Interpreting Taylor's ARP as one seeking "good time" credit, the denial stated he was not entitled to such credit because the law he sought credit under did not go into effect until 2010—years after both his sentences were rendered. ROA.105.

Taylor then proceeded to the "second step" of the ARP process, an appeal to the Secretary of the DPSC, James LeBlanc. ROA.82; *see* La. Admin. Code 22:I:325(J)(1)(b) (governing "second step" review). Secretary LeBlanc assigned the second step ARP response to Seth Smith, DPSC's Chief of Operations. ROA.82. The ARP was again denied with written reasons. ROA.105-106 (excerpt of denial). Apparently relying on law that had been in effect since 2011, the denial reasoned that the 18 months in question could only apply toward the completion of Taylor's 2006

amended sentence, not both the 2006 amended sentence *and* the 1995 sentence. ROA.106 ("Because your revocation is based on a new felony conviction all the credit goes to the new felony conviction); *see* La. Code Crim. P. art. 880(E) (effective since August 15, 2011) ("A defendant shall not receive overlapping jail credit, except in the instance of concurrent sentences and then only for time spent in jail on the instant felony."). The denial also apparently relied on a different subsection of the same code article prohibiting overlapping credit when consecutive, rather than concurrent, sentences are imposed. ROA.106 ("Your sentences are consecutive and therefore you would not have been allowed overlapping jail credit on these sentences."); La. Code Crim. P. art. 880(B) (effective since August 15, 2011) ("A defendant shall receive credit only for time in actual custody and only once during any calendar month when consecutive sentences are imposed.").[3]

Taylor then sought review of the denial of his ARP in state district court. ROA.84; *see* La. Admin. Code 22:I:325(J)(1)(b)(iv) (providing for

---

[3] *See also* La. Code Crim. P. art. 880 (effective from August 15, 2006 until August 14, 2011) ("[N]o defendant shall receive more than thirty days of jail credit for any calendar month while serving a term for consecutive sentences."); La. Code Crim. P. art. 880 (effective from 1997 until August 14, 2006) ("A defendant shall receive credit toward service of his sentence for time spent in actual custody *prior to the imposition of sentence*.") (emphasis added).

review of ARP denial "in district court"). On November 25, 2019, a 19th Judicial District Court Commissioner—who serves in a capacity similar to a magistrate judge in federal court—issued a report recommending that the state district court judge grant Taylor's petition for review. ROA.103-109 (Commissioner's Report). Even though there was "no evidence that the Petitioner served any actual time in custody towards his parole revocation . . . until his revocation on October 15, 2003," ROA.107, the Commissioner reasoned that during the 18 months (February 2002 to October 2003) he was awaiting trial on the new felony, Taylor "should have been shown as being in custody on both offenses (revocation matter and new felony) as of" his date of arrest in February 2002. ROA.108. More specifically, the Commissioner reasoned that Taylor's parole had been revoked as a matter of law no later than the date of his arrest in February 2002. ROA.107-108. And even though there was no evidence suggesting Taylor was being detained in local jail based on this revocation—the record showed he was being held as a pretrial detainee on the new felony charges—he should have been given credit toward the completion of his 1995 sentence as if he had been picked up and arrested on the parole revocation. *See* ROA.107-109. Furthermore,

the Commissioner reasoned that receiving this credit should not bar Taylor from also receiving credit for this same time toward the completion of his 2006 amended sentence, because the version of Code of Criminal Procedure article 880 then in effect did not expressly prohibit such double credit. ROA.108.

On January 13, 2020, a state district court judge adopted the Commissioner's recommendation. ROA.110. The state district court did not hold that Taylor was entitled to immediate release. The court simply issued an order adopting the Commissioner's recommendation: that Taylor's "master prison record shall be recalculated to show the Petitioner is given credit for time served in in (sic) both docket numbers"—the 1995 sentence and the 2006 amended sentence—"from February 20, 2002." ROA.110.

On February 18, 2020, Taylor was released from prison. ROA.75.

## II.  PROCEDURAL HISTORY

### A.  TAYLOR SUES LEBLANC AND OTHER DPSC DEFENDANTS IN STATE COURT AND THE CASE IS REMOVED.

On December 20, 2020, Taylor sued Secretary LeBlanc, Warden Hooper, Milligan, and the DPSC in Louisiana's 18th Judicial District Court in Iberville Parish. ROA.11. The suit was captioned a "petition for

damages for false imprisonment held over 18 month after release date."
ROA.11. Taylor alleged that he "should have been released on July 17,
2016 but [he] was held after that date." ROA.11-12. It's unclear from the
petition how Taylor arrived at that date. On January 29, 2021, the case
was removed to the United States District Court for the Middle District
of Louisiana. ROA.4-7 (Notice of Removal).

### B.   LeBlanc and the other DPSC Defendants move to dismiss all claims against them.

On February 10, 2021, Defendants, including LeBlanc, moved to
dismiss all of Taylor's claims. ROA.53-55 (Defendants' Motion to
Dismiss). Secretary LeBlanc argued, among other things, that he was
entitled to qualified immunity from Taylor's constitutional claims
seeking monetary damages against him. ROA.54; ROA.66-71. Because
Taylor's petition was too vague to warrant a response, Defendants asked
the district court to order Taylor to file an amended complaint curing the
vagueness deficiencies. ROA.64.

### C.   Taylor amends his complaint, and briefing continues on Defendants' motion to dismiss.

Taylor did not wait for the court to order him to amend his petition.
On March 1, 2021—the deadline for his opposition to Defendants' Motion
to Dismiss—Taylor filed an Amended Complaint. ROA.74-110 (Amended

Complaint and attachments). Notably, after Defendants argued in the memorandum supporting their Motion to Dismiss that his state law claims were prescribed, Taylor changed course and alleged that he should have been released "around the last of October 2017 and no later than January 1, 2018," ROA.75, more than a year later than he originally claimed. ROA.11-12 (alleging entitlement to release on July 17, 2016). It remains unclear from his allegations how he allegedly was due for release in either October 2017 or January 2018.

Also on March 1, 2021, Taylor filed a brief in opposition to Defendants' Motion to Dismiss. ROA.111-124. The portion of the brief responding to Secretary LeBlanc's assertion of qualified immunity was two sentences long. ROA.119. It read, in full:

> There are several cases on the docket of this Court or docketed in New Orleans, with depositions and statements and formal audits on the DOC regarding the supervision, policies and operations of the DOC by the Secretary, James LeBlanc. The allegations are that over an extended period of time the Secretary has failed to adopt meaningful policies and there appears to be a lack of regulations adopted by the secretary or any effort to have legally trained personnel making the time computations. See Amended Complaint, ¶ 37, 47, ¶¶ 55-75.

ROA.119.

Construing the citations to the Amended Complaint liberally, Taylor appeared to argue that Secretary LeBlanc violated his constitutional rights by refusing to have a policy that required licensed attorneys to both perform time computations and review alleged errors in time computations. *See* ROA.120 ("Here, the Amended Complaint avers that it was unreasonable to have lay persons, who did not comprehend the concept of credit for time served, acting in a legal capacity to calculate release dates . . . ."). In reply, Defendants explained that there is no constitutional right to have an attorney perform time computations. ROA.131. Additionally, they argued that the mere denial of an ARP could not constitute a constitutional violation. ROA.131-132. They also argued that even if Taylor had adequately alleged that each defendant violated his constitutional rights, they were still entitled to qualified immunity because he failed to cite case law that could have put them on notice that their individual alleged conduct was unconstitutional. ROA.132.

**D.    THE DISTRICT COURT DISMISSES MOST OF TAYLOR'S CLAIMS, BUT DENIES LEBLANC QUALIFIED IMMUNITY ON TAYLOR'S SECTION 1983 SUPERVISORY LIABILITY CLAIM**

On September 13, 2021, the district court granted in part and denied in part Defendants' Motion to Dismiss. ROA.163-178 (Ruling and Order). Despite Taylor's attempt to cure the untimeliness of his lawsuit, the court dismissed Taylor's state law claims as prescribed. ROA.169-170. The district court also dismissed Taylor's official capacity claims as barred by sovereign immunity. ROA.170-171. But the court did not hold that all Defendants were entitled to qualified immunity from all of Taylor's constitutional claims. *See* ROA.178.

On Taylor's supervisory liability claims, the district court awarded Warden Hooper qualified immunity but denied it to Secretary LeBlanc. ROA.175-176. As for Taylor's "direct involvement" claims, the court did the opposite, awarding LeBlanc qualified immunity but denying immunity to Warden Hooper (and Robin Milligan). ROA.176-178. To the extent Taylor alleged a separate claim that he had a right to have an attorney perform and review his time computation, the Court awarded all Defendants immunity on this claim. ROA.178 ("Plaintiff has provided no support for the argument that he had a clearly established right to

13

have legal counsel or an attorney calculate his release date. Accordingly, Defendants are entitled to qualified immunity on this claim.").

Only Secretary LeBlanc appeals the district court's Ruling and Order. ROA.179. And the only claim at issue is Taylor's claim that LeBlanc, solely in his supervisory capacity, violated Taylor's Fourteenth Amendment rights.[4]

## SUMMARY OF THE ARGUMENT

Percy Taylor's only remaining claim against Secretary James LeBlanc amounts to classic vicarious liability for an alleged sentencing computation miscalculation. Vicarious liability claims are not actionable under § 1983. The district court should have awarded qualified immunity to LeBlanc on this claim. Its refusal to do so constitutes reversible error.

What led the district court to err was misapplication of the well-settled two-step qualified immunity inquiry. On the first step—whether Taylor alleged facts sufficient to show that LeBlanc, in his supervisory

---

[4] Louisiana's Due Process protections are "coextensive" with those in the U.S. Constitution. *Burge*, 187 F.3d at 482. To the extent Taylor has state constitutional claims remaining against Secretary LeBlanc, the Secretary's arguments challenging the district court's denial of qualified immunity apply equally to the federal *and* state claims against him. Therefore, without separately briefing whatever state constitutional claims might remain, LeBlanc requests that this Court's ruling be applied equally to both the federal and state constitutional claims against him.

capacity, violated Taylor's constitutional rights—the district court incorrectly determined "that LeBlanc was aware of a pattern of similar constitutional violations but failed to correct them." ROA.174. In fact, under this Court's precedents, Taylor's Amended Complaint comes nowhere close to establishing the requisite level of "very similar" constitutional violations necessary to establish deliberate indifference for § 1983 supervisory liability. *See Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019).

The second step, meanwhile—whether Secretary LeBlanc's alleged conduct was objectively unreasonable under clearly established law— was essentially ignored by the district court. Had the district court properly grappled with the purely legal issue, it should have concluded that neither this Court nor the Supreme Court has ever held a state prison system supervisor like Secretary LeBlanc individually liable on claims even remotely similar to Taylor's in this case. This glaring absence of sufficiently specific "clearly established law" entitles LeBlanc to qualified immunity from Taylor's supervisory liability claim.

Nothing in the Constitution—or in clearly established jurisprudence—guarantees error-free sentencing calculation. Just

15

because a state judge determined that Taylor was entitled to sentence credit that he had initially been denied does not mean Secretary LeBlanc can be held personally liable for violating Taylor's constitutional rights. This is so because Taylor fails to allege that LeBlanc knew about offenders who complained of similar types of sentencing miscalculations yet did nothing. Without this allegation, Taylor has not shown deliberate indifference on LeBlanc's part, and LeBlanc is entitled to qualified immunity. This Court should reverse the district court's contrary ruling.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's denial of a motion to dismiss seeking qualified immunity. *Doe v. Robertson*, 751 F.3d 383, 386 (5th Cir. 2014).

## ARGUMENT

James LeBlanc is entitled to qualified immunity unless Percy Taylor, the plaintiff, has alleged facts sufficient to show that (1) LeBlanc violated Taylor's constitutional rights and (2) LeBlanc's actions were objectively unreasonable in light of clearly established law. *Saucier v. Katz*, 533 US. 194, 201 (2001). It is Taylor's burden to overcome LeBlanc's assertion of qualified immunity. *Benfield v. Magee*, 945 F.3d 333, 337 (5th

Cir. 2019) ("Once a defendant raises a qualified-immunity defense, the burden shifts to the plaintiff . . . ."). Here, because Taylor has failed to carry his burden, LeBlanc is entitled to qualified immunity.

A court *denying* qualified immunity must hold that the plaintiff overcame *both* steps of the qualified immunity analysis. *Cleveland v. Bell*, 938 F.3d 672, 675–76 (5th Cir. 2019). But a court *granting* qualified immunity need only decide that the plaintiff has failed to carry his burden at either step. *Id.*[5]

## I. TAYLOR FAILED TO ALLEGE FACTS SUFFICIENT TO SHOW THAT SECRETARY LEBLANC VIOLATED HIS CONSTITUTIONAL RIGHTS

To overcome the first prong of LeBlanc's qualified immunity defense, Taylor must allege facts sufficient to show that LeBlanc was deliberately indifferent to Taylor's constitutional rights. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Because vicarious liability does not exist under § 1983, the focus is on LeBlanc's alleged knowledge and conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government official defendant, *through the official's own*

---

[5] *Accord Cunningham v. Castloo*, 983 F.3d 185, 194 (5th Cir. 2020) (reversing denial of qualified immunity without addressing first prong); *Porter v. Epps*, 659 F.3d 440, 448 (5th Cir. 2011) (same); *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (affirming grant of qualified immunity without addressing first prong); *Bailey v. Preston*, 702 F. App'x 210, 214 (5th Cir. 2017) (per curiam) (unpublished) (same).

*individual actions*, has violated the Constitution.") (emphasis added). Thus, the allegations must establish that LeBlanc adopted—or failed to adopt—a policy he knew would obviously result in the violation of Taylor's constitutional rights. *Porter*, 659 F.3d at 446.

Taylor's allegations do not show deliberate indifference. This Court has held that deliberate indifference cannot exist without a "pattern of similar constitutional violations"—otherwise, supervisors would improperly be subject to "*de facto respondeat superior* liability." *Id.* at 447 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "[O]nly *very similar* violations" can form the type of pattern necessary to establish deliberate indifference in this context. *Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019) (emphasis added) (citing *Connick*, 563 U.S. at 62).

In *Jason v. Tanner*, a prisoner attacked another inmate with a sling blade, and the injured inmate sued the prison's warden claiming that he was deliberately indifferent to the inmate's Eighth Amendment rights. *Id.* at 192. Although the district court denied qualified immunity to the warden, this Court reversed. *Id.* at 199. Applying the same deliberate indifference standard that applies in this case, this Court reasoned that "[w]hen inmate-on-inmate violence is a week-to-week regularity, four

18

broom-or-mop incidents over seven years might not reasonably sound the yard-tool alarm." *Id.* at 198. Stated differently, "even a repeated pattern of violence isn't by itself enough to prove deliberate indifference" when an inmate is injured by an entirely different type of violent act than had previously occurred. *Id.*

The same is true here. Accepting as true the broad allegation that LeBlanc was aware of previous "over-detentions," nowhere does Taylor allege that LeBlanc knew his subordinates were systematically and chronically depriving inmates of overlapping jail credits that, for years, inmates have been prohibited from receiving. In fact, Taylor does not even directly challenge the computation of his sentence presumably performed around 2006. If he had, his claim against LeBlanc would necessarily fail since there are no allegations that LeBlanc was aware of a pattern of over-detention that long ago. *See Porter*, 659 F.3d at 447 (explaining that deliberate indifference cannot exist without knowledge of a pattern of past similar constitutional violations).

Instead, Taylor's Amended Complaint focuses on what allegedly happened during the *review* of his sentence computation—more than a decade *after* the computation had presumably performed—throughout

the ARP process. But Taylor cannot establish a Due Process violation against LeBlanc when Taylor *benefited* from the Due Process that the DPSC provides prisoners through the ARP process and subsequent judicial review.

Additionally, despite the list of names of former prisoners who were allegedly over-detained in Taylor's Amended Complaint, he fails to allege that their cases were similar to his, much less that they were "very similar." ROA.92-94; *Jason*, 938 F.3d at 198. This glaring absence is fatal to his supervisory liability claim against Secretary LeBlanc.

The district court's analysis on this first prong qualified immunity issue was flawed and difficult to follow. The court conflated the first and second prong analyses, performing its *first* prong analysis under a *second* prong subheading; it then failed to conduct a proper second prong analysis at all. *See* ROA.171-172; ROA.174-175. This was error.

The district court ultimately concluded that Taylor alleged Secretary LeBlanc had notice "that unlawful detention was an issue that required his managerial attention," and that LeBlanc's "failure to adopt policies to correct DPSC's unlawful detention problem constitutes deliberate indifference to Plaintiff's constitutional right to timely

release." ROA.175. *First*, this is *exactly* the sort of "legal conclusion" or "conclusory statement" which a court cannot accept at face value. *Benfield*, 945 F.3d at 336–37 ("We do not, however, accept as true legal conclusions, conclusory statements, or 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Iqbal*, 556 U.S. at 678). *Second*, this was an improperly broad framing of the legal question at issue. More specificity is necessary to establish the kind of "very similar" pattern of constitutional violations needed to establish deliberate indifference by an agency-level supervisor. *Jason*, 938 F.3d at 198; *see Connick*, 563 U.S. at 62 (holding that a possible pattern of "*Brady* violations" was not sufficiently specific to put an official on notice that "*Brady* training was inadequate with respect to the sort of Brady violation at issue here.").

There is, however, an even more fundamental problem with the district court's reasoning. Taylor essentially alleges that because a state judge determined he was entitled to credit he had initially been denied, he should be able to collect money damages from the Secretary personally. Neither § 1983 nor the Constitution permits this.

The DPSC's Administrative Remedy Procedure process and state judicial review exist *precisely* to safeguard inmates' right to be timely

21

released from prison. *See* La. R.S. 15:1171-1179 (creating and authorizing the Corrections Administrative Remedy Procedure and the judicial review process); La. Admin. Code 22:I:325(J) (providing for two-step intra-agency review of prisoner grievances). The Constitution does not guarantee error-free sentencing calculation. Nor does it guarantee error-free review of sentencing calculations by licensed attorneys, which the district court correctly recognized. ROA.178 ("Plaintiff has provided no support for the argument that he had a clearly established right to have legal counsel or an attorney calculate his release date. Accordingly, Defendants are entitled to qualified immunity on this claim.").

What the Fourteenth Amendment guarantees is a right to Due Process. U.S. Const. amend. XIV § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."). Taylor indisputably received this according to his own allegations. The fact that a state judge interpreted a question of state sentencing law differently than the DPSC does not mean Secretary LeBlanc personally violated the Constitution. It means the error review system—the ARP process and subsequent judicial review—worked as designed for this one

individual given the unique circumstances of his incarceration and sentences.

Because Taylor's allegations do not show that Secretary LeBlanc violated his constitutional rights, LeBlanc is entitled to qualified immunity. This Court should reverse the district court's erroneous contrary conclusion.

## II. SECRETARY LEBLANC'S ALLEGED CONDUCT WAS NOT OBJECTIVELY UNREASONABLE UNDER CLEARLY ESTABLISHED LAW.

Even if this Court decides that Percy Taylor alleged facts sufficient to show that Secretary LeBlanc, in his supervisory capacity, violated Taylor's Fourteenth Amendment rights, LeBlanc is still entitled to qualified immunity. This is because LeBlanc's alleged conduct was not objectively unreasonable under clearly established law defined at the appropriate level of specificity.

The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Instead, the applicable "clearly established" law must be defined "with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). Although a case "directly on point" is not required to clearly

establish law, "existing precedent must have placed the statutory or constitutional question beyond debate." *Anderson v. Valdez*, 913 F.3d 472, 476 (5th Cir. 2019) (quoting *Mullenix*, 577 U.S. at 12).

In briefing to the district court, Taylor failed to cite any case law from this Court or the Supreme Court that could have put Secretary LeBlanc on notice that his alleged conduct violated Taylor's constitutional rights. *See* ROA.117-120. Because it is Taylor's burden to overcome LeBlanc's assertion of qualified immunity, this failure should have led to the dismissal of Taylor's supervisory liability claim against LeBlanc. *Vann v. City of Southaven, Mississippi*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) ("In the district court, Plaintiff . . . cited nary a pre-existing or precedential case. That alone dooms his case here.").

The only Fifth Circuit case cited in the "Qualified Immunity Law" section of Taylor's brief in opposition before the district court, *Porter v. Epps*, could not possibly have put LeBlanc on notice that his alleged conduct in *this* case was unconstitutional. ROA.120. That's because in *Porter* this Court *awarded* qualified immunity to the Commissioner of the Mississippi Department of Corrections, *reversing* a jury's verdict that had denied him qualified immunity. *Porter v. Epps*, 659 F.3d 440, 448

24

(5th Cir. 2011). In any event, the supervisory claim in *Porter* was whether the administrator had established a policy of deliberate indifference towards his agency's "failure to interpret sentencing orders correctly," an allegation not made by Taylor in this case. *Id.* at 444.

Even though the panel in *Porter* stated that "there is a clearly established right to timely release from prison," the case itself did not clearly establish anything for qualified immunity purposes. After all, "the plaintiff's burden at step two is not satisfied by broadly stating that 'citizens are protected against unjustified, excessive police force.' This general statement is insufficient to meet [Plaintiffs'] burden." *Valencia v. Davis*, 836 F. App'x 292, 297 (5th Cir. 2020) (per curiam) (unpublished) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732 (5th Cir. 2016) (per curiam). Merely stating the obvious—that inmates have a right to be timely released from prison—does not instruct LeBlanc how he should devise policies to potentially avoid the type of specific time computation review issue raised by Taylor's allegations. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is

clearly established."); *accord City of Escondido*, 139 S. Ct. at 503 ("The Court of Appeals should have asked whether clearly established law prohibited the officers from stopping and taking down a man in these circumstances. Instead, the Court of Appeals defined the clearly established right at a high level of generality by saying only that the 'right to be free of excessive force' was clearly established.").

To the extent the district court addressed the second prong at all, it also essentially anchored its reasoning on *Porter*. *See* ROA.171-172 ("It is undisputed that Plaintiff sufficiently alleges a violation of his plainly established constitutional right to timely release."). But it is reversible error to frame the applicable clearly established law so broadly. *See Cunningham v. Castloo*, 983 F.3d 185, 193 (5th Cir. 2020) (collecting Supreme Court cases reversing lower courts that "fram[ed] clearly established law too generally"). The same result is warranted here.

The 19th JDC Commissioner's analysis of Taylor's ARP actually *strengthens* LeBlanc's assertion of qualified immunity. The Commissioner—a judicial officer with years of experience handling prisoner grievance reviews—visibly wrestled with Taylor's appeal from the denials of his ARP. *See* ROA.103-109. Even for the Commissioner, the

"answer" to Taylor's grievance was not obvious. The Commissioner did not cite any case law suggesting that it was. *See* ROA.106-109. Given that Taylor cannot even show that the alleged error in his sentencing calculation was obvious, he clearly has failed to show that LeBlanc's policies regarding the ARP process are objectively unreasonable under clearly established law.

Addressing a different type of § 1983 supervisory liability claim against prison officials, this Court in *Johnson v. Johnson* reversed a district court's order denying certain officials qualified immunity. 385 F.3d 503, 526 (5th Cir. 2004). The court reasoned:

> Like all prison officials, these supervisory defendants have a duty to take reasonable measures to protect inmates. Yet given the size of the operation that they oversee, they cannot be expected to intervene personally in response to every inmate letter they receive. The record in this case shows that they responded to Johnson's complaints by referring the matter for further investigation or taking similar administrative steps. This was a reasonable discharge of their duty to protect the inmates in their care. Given that neither the Supreme Court nor this court has delineated the contours of what supervisory officials must do on pain of personal liability, their conduct did not violate clearly established law of which reasonable officers should have known. Therefore, they are entitled to qualified immunity.

*Id.* (citation omitted). The same reasoning applies here. Because Taylor has failed to show that Secretary LeBlanc's alleged conduct violated clearly established law, LeBlanc is entitled to qualified immunity.

## CONCLUSION

This Court should reverse the district court, hold that Secretary LeBlanc is entitled to qualified immunity, and remand with instructions that Percy Taylor's remaining federal and state constitutional claims against LeBlanc be dismissed with prejudice.

Respectfully submitted,

/s/ Elizabeth B. Murrill
Jeff Landry
 Attorney General
Elizabeth B. Murrill*
 Solicitor General
 *Counsel of Record*
Ben Wallace
 Asst. Solicitor General
André Charles Castaing
Phyllis E. Glazer
 Asst. Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 326-6766
 MurrillE@ag.louisiana.gov
*Counsel for Defendant-Appellant*

28

## CERTIFICATE OF SERVICE

I certify that on January 28, 2022, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to Appellant's counsel of record.

*/s/ Elizabeth B. Murrill*
Elizabeth B. Murrill
*Attorney for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that:

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains **4,960** words, exclusive of parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016, Century Schoolbook, 14-point font.

*/s/ Elizabeth B. Murrill*
Elizabeth B. Murrill
*Attorney for Defendant-Appellant*

January 28, 2022